**ARTHUR YOUNG, INC., a corporation, Plaintiff,**

v.

**ARTHUR YOUNG & COMPANY, a partnership, and d/b/a Arthur Young Executive Resource Consultants, Counterclaimant/Defendant.**

**Civ. A. No. 82–L–2692–S.**

United States District Court, N.D. Alabama.

July 14, 1983.

Charles E. Clark, Clark & Caddis, Birmingham, Ala., for plaintiff.

Brittin T. Coleman, Linda Friedman, Bradley, Arant, Rose & White, Birmingham, Ala., for counterclaimant/defendant.

Eugene R. Erbstoesser, Arthur Young & Co., New York City, in house counsel for counterclaimant/defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

LYNNE, District Judge.

Plaintiff, Arthur Young, Inc., a corporation engaged in the business of executive search and recruitment, filed this declaratory judgment action seeking a declaration that its use of the name of its president and sole stockholder, Arthur Young, in its corporate name does not violate the trademark laws of the United States. Defendant and counterclaimant, Arthur Young & Company, a partnership widely known as a "Big-Eight" accounting firm, filed a counterclaim in which it alleged that plaintiff's use of "Arthur Young" infringes its service marks and trade names "Arthur Young & Company", "Arthur Young" and "Arthur Young Executive Resource Consultants", in violation of the Lanham Act, 15 U.S.C. § 1114, the common law and the Alabama Trademark Act, 1975 *Code of Alabama* § 8–12–18. Counterclaimant further alleged that such use dilutes the distinctive quality of these marks and trade names and is likely to injure the reputation of such marks and names, in violation of the Alabama Anti-Dilution statute, 1975

*Code of Alabama* § 8–12–17. Counterclaimant Arthur Young & Company seeks an injunction, an award of plaintiff's profits, attorneys fees and costs.

Since its inception in Chicago in 1906, counterclaimant has provided accounting, auditing, tax and management services under the name Arthur Young & Company. The firm has been a national partnership since 1921, expanding its offices over the years. It has had an Alabama office located in Birmingham since 1963.

In 1960, Arthur Young & Company began providing executive search services as one of its primary management consulting services from its various nationwide offices. The firm provided such services in the Birmingham area at least as early as 1974 and, in the 1970's, had one individual in its Birmingham office who worked exclusively in the executive search field. In 1979, Arthur Young & Company restructured its executive search services by organizing a separate division or service organization, Arthur Young Executive Resource Consultants, within its management services department, and by adopting a regional office organization. Arthur Young & Company continued to engage in the executive search business on a nationwide basis through Arthur Young Executive Resource Consultants, providing those services from several regional offices each responsible for multi-state areas. The eastern and southern part of the United States, including Alabama, has been served from the Washington, D.C. office of Arthur Young Executive Resource Consultants since 1980.

Arthur Young & Company obtained federal service mark registrations under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, for "Arthur Young Executive Resource Consultants" for "advising organizations on corporate director and executive recruitment and executive selection advisory services" and "Arthur Young & Company" for "accounting, auditing, tax and management services". The firm also registered with the Alabama Secretary of State the service marks "Arthur Young Executive

Resource Consultants" and "Arthur Young".

Plaintiff corporation, Arthur Young, Inc., was organized in September, 1981 by Mr. Arthur L. Young and Mr. F. Lee Powell, then the company's two major stockholders and officers. Mr. Young, the company's president, later acquired Mr. Powell's stock and is now the company's sole shareholder. Arthur Young, Inc. has one office in Birmingham, Alabama from which it engages in the executive search business primarily in the south and southwest, but plaintiff has had at least some communication with clients or potential clients in twenty-four states.

In the fall of 1982, Arthur Young & Company first learned of Arthur Young, Inc., as a result of telephone calls for the plaintiff company received by the Birmingham office of counterclaimant. On October 12, 1982, counsel for counterclaimant Arthur Young & Company wrote a letter to plaintiff Arthur Young, Inc. advising of Arthur Young & Company's federal registrations, of its other service mark and trade name rights, of the confusion that had occurred, and requesting that Arthur Young, Inc. change its name to avoid further infringement. Soon thereafter, this declaratory relief action was filed by Arthur Young, Inc. to seek a determination of its right to use "Arthur Young".

*Infringement of Federally Registered Marks*

Counterclaimant Arthur Young & Company has the exclusive right to use its federally registered marks, "Arthur Young & Company", and "Arthur Young Executive Resource Consultants" in connection with the services covered by the registrations. Registration of "Arthur Young Executive Resource Consultants" is prima facie evidence of the firm's exclusive rights thereto, pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1057(b); there has been no evidence presented to rebut this prima facie evidence. Registration of "Arthur Young & Company" is conclusive evidence of Arthur Young & Company's exclusive rights to that mark, and those rights are incontestable, pursuant to the provisions of 15 U.S.C. Sections 1057 and 1115(b). Plaintiff has not pled or established any of the defenses or defects, identified in 15 U.S.C. § 1115, to such incontestable registration.

Applying the several factors which the Eleventh Circuit has identified as relevant in trademark infringement cases, the Court finds that there is a likelihood of confusion from plaintiff's use of "Arthur Young" and concludes that plaintiff's mark infringes upon the marks of counterclaimant Arthur Young & Company.

■ The service marks of Arthur Young & Company are strong marks. The only evidence of third party use being an "Arthur Young Chevrolet" in Illinois, the Court finds that counterclaimant's marks are "rarely used by parties other than the owner of the trademark." *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 504 (5th Cir.1980). Further evidence of the mark's strength is that "Arthur Young" does not describe or suggest the services, or the nature of the services, to which it is applied and therefore it is an arbitrary or fanciful mark. *See Sun Banks v. Sun Federal Savings & Loan Ass'n*, 651 F.2d 311, 315–16 (5th Cir.1981) (discussing classification of service marks and trademarks). Moreover, Arthur Young & Company has expended considerable efforts and millions of dollars over many years in promoting its marks and the services associated with them. Consequently, the marks are entitled to broad protection. *John H. Harland Company v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir.1983) (slip opinion).

■ The parties depict their respective marks in very similar, and sometimes identical, styles. Plaintiff's business cards and stationery depict its name in capitalized, block letters. This form is very similar to the style (block outlines of the letters in all capitals) primarily used by counterclaimant for its "Arthur Young," including the "Arthur Young" portion of "Arthur Young Executive Resource Consultants."

The parties are both engaged in the executive search business and both provide virtually the same services—namely, searching for qualified individuals for executive and managerial positions with client companies and presenting those candidates to the companies.

Both parties solicit and serve the same types of customers, namely, corporations looking to employ executive and managerial level personnel. The parties, in fact, contacted many of the same companies in several different states in an attempt to solicit their business. The national director and the eastern director of Arthur Young Executive Resource Consultants have personally solicited and placed candidates with corporations in the same market served by plaintiff in Alabama, Florida, Texas and other states. Many of the companies which have received executive search services from one party have been solicited by the other party, seeking to provide such services. Further, at least one of plaintiff's clients is an audit client of counterclaimant Arthur Young & Company.

Since the executive search business is not a retail business, a comparison of the parties' executive search offices is not relevant. However, it is relevant that both parties have offices in Birmingham, Alabama, which are both listed in the Birmingham telephone book. Although counterclaimant does not presently employ an executive recruiter in its Birmingham office, such services being provided from its Washington D.C. office, its Birmingham office regularly receives numerous unsolicited resumes from individuals seeking to be placed with the firm's clients.

Arthur Young, Inc. and Arthur Young & Company's executive search division both solicit and conduct business by telephone, mail and personal visits to the offices of clients and prospective clients. Both parties serve the same geographic areas, although to date counterclaimant has covered a larger area.

While counterclaimant Arthur Young & Company has used more forms of advertising than has plaintiff, its advertising includes all forms used by plaintiff. In addition to both appearing in the Birmingham telephone directory, both companies are listed in a directory published by the Birmingham Chamber of Commerce. Both have advertised for job candidates in the help-wanted sections of local newspapers. Both parties have promoted their marks and businesses by supporting athletic events in the Birmingham area. For example, plaintiff was listed in the program of the Birmingham Barons professional baseball team and counterclaimant advertised in programs of the college basketball Sunbelt Conference and the George Lindsey Celebrity Golf Tournament, held in Birmingham. A softball field in a Birmingham suburb close to plaintiff's place of business has a large sign erected by counterclaimant which reads "Arthur Young Field." Further, a major form of promotion engaged in by both parties is marketing campaigns conducted through the mail to prospective clients.

Another factor relevant to the issue of likelihood of confusion is the intent of the alleged infringer. Plaintiff's founders have admitted that they were aware of Arthur Young & Company at the time they selected their company's name, but they deny knowing that Arthur Young & Company was engaged in the executive search business. They did know that Arthur Young & Company was a national accounting firm with a Birmingham office and Mr. Powell was a personal friend of the man who opened that Birmingham office in 1963. Arthur Young & Company offered that knowledge as evidence of plaintiff's bad faith, as well as other evidence, including the prior experience of Messrs. Young & Powell in dealing with executive recruiters; the omission of Mr. Young's middle initial from the corporation's name despite Mr. Young's use of his initial in signing checks, in letters, and elsewhere; the fact that Messrs. Young & Powell saw a Wall Street Journal article referring to Arthur Young & Company's executive search arm one month after they began business but took no steps to investigate that business

or to obtain advice of counsel regarding the propriety of their use of the name; plaintiff's failure to check federal or state trademark registrations or to seek legal advice, at any time, regarding counterclaimant's known use of "Arthur Young", and plaintiff's refusal to change its name after being advised of counterclaimant's service mark registrations and rights in October 1982. The Court is of the opinion, however, that a significant factor in determining plaintiff's intent is that plaintiff's corporate name is the name of its president. Although this fact does not constitute a defense to trademark infringement, *See John R. Thompson Co. v. Holloway,* 366 F.2d 108, 113–14 (5th Cir.1966), it does lead the Court to conclude that plaintiff did not intentionally and deliberately misappropriate the service mark of Arthur Young & Company.

Finally, there have been numerous instances of actual confusion. The Birmingham offices of both plaintiff and counterclaimant have received numerous telephone calls and mail intended for the other party. One of the letters mistakenly sent to plaintiff was from one of counterclaimant's clients which had been solicited by plaintiff. Several people have asked Mr. Young and Mr. Powell whether their company is affiliated with Arthur Young & Company.

In conclusion, all but one of the foregoing factors weigh in favor of a finding of likelihood of confusion. Accordingly, the Court finds that plaintiff has infringed the federally registered service marks of counterclaimant, Arthur Young & Company.

*Infringement Under Alabama Law*

■ The test of infringement of marks registered with the Alabama Secretary of State and of common law marks and trade names is the same as under the Lanham Act, namely, whether the alleged infringer's mark creates a likelihood of confusion. 1975 *Code of Alabama* §§ 8–12–18, –19.

■ Alabama does not recognize a defense for use of a personal name as a trade name or service mark. *See, e.g., N.L. Pierce National Detective Agency v. Pierce Detective Agency,* 217 Ala. 594, 117

So. 191, 192 (1928); *G.B. McVay & Son Seed Co. v. McVay Seed & Floral Co.,* 201 Ala. 644, 79 So. 116, 118–19 (1919). However, it is unclear whether Alabama law would require a finding that the service mark owner's mark has acquired secondary meaning before a business will be enjoined from using the personal name of one of its principals. *See generally Taylor Wine Co. v. Bully Hill Vineyards, Inc.,* 569 F.2d 731 (2d Cir.1978); *A.W. Cox Dept. Store Co. v. Cox's, Inc.,* 221 S.E.2d 539 (W.Va.1976); *MacSweeney Enterprises, Inc. v. Tarantino,* 235 Cal.App.2d 549, 45 Cal.Rptr. 546 (1965); *Visser v. Macres,* 214 Cal.App.2d 249, 29 Cal.Rptr. 367, 369, 372 (1963); *Hat Corp. of America v. D.L. Davis Corp.,* 4 F.Supp. 613, 617–22 (D.Conn.1933).

■ If a secondary meaning is a prerequisite to relief under Alabama law, the Court finds that the marks "Arthur Young" and "Arthur Young & Company" have acquired a secondary meaning as a result of counterclaimant's longtime use and extensive advertising and promotion of these marks and of the services associated with the marks. This conclusion is further supported by the results of two market surveys, conducted in 1976 and 1978, which showed the relevant market's familiarity with "Arthur Young" and the services provided under that name, including executive search services.

Accordingly, plaintiff's use of "Arthur Young" also infringes the trade names and service marks of counterclaimant under Alabama law.

*Alabama Dilution Claim*

■ In addition, counterclaimant alleges that plaintiff's use of "Arthur Young" is likely to injure the business reputation of or to dilute the distinctive quality of its marks and trade names, in violation of the 1975 *Code of Alabama,* § 8–12–17.

While there have been no reported decisions under this relatively new Alabama statute, cases decided under similar statutes in other states support the contentions of counterclaimant under the Alabama statute. *See, e.g., Community Federal Sav-*

*ings & Loan v. Orondorff,* 678 F.2d 1034, 1168 (11th Cir.1982) (Florida statute); *The Pillsbury Co. v. Milky Way Productions, Inc.,* 215 USPQ 124, 135 (N.D.Ga.1981) (Georgia statute); *Wedgwood Homes, Inc. v. Lund,* 294 Or. 493, 659 P.2d 377 (1983) (*en banc*) (Oregon statute); *Estee Lauder, Inc. v. Cinnabar 2000 Haircutters, Inc.,* (S.D.N.Y. April 23, 1982) (Slip opinion) (New York statute); *The Instrumentalist Co. v. Marine Corps League,* 212 USPQ 555 (N.D.Ill.1981) (Illinois statute); *Augusta National Inc. v. Northwestern Mutual Life Ins. Co.,* 193 USPQ 210 (S.D.Ga.1976) (Georgia statute).

Counterclaimant Arthur Young & Company has demonstrated that its mark is strong and distinctive. Plaintiff's use of "Arthur Young" is likely to dilute the distinctiveness of that mark which Arthur Young & Company has created through its extensive promotions and through the efforts it has devoted to protecting and enhancing the image of the mark over many years.

While the foregoing finding in itself requires the conclusion that the Alabama statute has been violated, the Court also notes that evidence has been presented indicating that the statute has been violated in a second way, namely, by likelihood of injury to the reputation of counterclaimant's marks and trade names. Such evidence includes the fact that plaintiff charges contingency fees, which is considered unethical according to counterclaimant's understanding of the standards of the executive search profession.

In conclusion, the evidence demonstrates that counterclaimant is entitled to injunctive relief under the Alabama Anti-Dilution statute.

*The Claim For Profits and Attorneys Fees*

While profits are available under Alabama law as well as under the Lanham Act and attorneys fees are available in "exceptional cases" under the Lanham Act, the Court does not award profits or fees to counterclaimant. This is not an exceptional case.

*Conclusion*

The Court concludes that Arthur Young & Company is entitled to injunctive relief on the separate grounds hereinabove discussed. An injunction will be entered by separate order.

## FINAL JUDGMENT

This action came for a bench trial before the Court, and in accordance with the accompanying Findings of Fact, Conclusions of Law and Memorandum Opinion, it is

ORDERED, ADJUDGED and DECREED that:

1. Plaintiff's use of "Arthur Young" alone or in conjunction with any other word or words is an infringement of counterclaimant's marks and trade names "Arthur Young", "Arthur Young & Company" and "Arthur Young Executive Resource Consultants."

2. As to affirmative relief:

(a) Plaintiff is enjoined from using, in its corporate name, business name or in any other manner, "Arthur Young" alone or in conjunction with any word or words; and plaintiff is further enjoined from using any other designation confusingly similar to "Arthur Young", including any designation which includes either "Arthur" or "Young".

(b) Plaintiff, having advised the Court that it has selected as its new corporate name "A.L.Y., Inc." and that the Alabama Secretary of State has approved that name, is directed to take all steps necessary promptly to cease use of "Arthur Young", and all variants thereof, as a designation, name, nickname, trade name and/or service mark, to adopt "A.L.Y., Inc." as its corporate name, and to notify all appropriate governmental offices of its new corporate name. Failure of plaintiff's controlling shareholders or officers to take appropriate action to take these steps shall constitute a violation of this judgment, subjecting plaintiff to further injunction and/or damages payable to counterclaimant.

(c) Plaintiff shall notify the telephone company of its new name, A.L.Y., Inc., and make arrangements for plaintiff's new name to replace its original name with the directory assistance listing, and for plaintiff's original name to be deleted therefrom.

(d) Plaintiff shall take no action subsequent to entry of judgment herein to obtain or generate any additional forms, letterhead, advertisements or other printed materials bearing the words "Arthur Young" as an identifier of plaintiff or its business.

(e) Plaintiff shall not use, subsequent to thirty days after entry of this judgment, any of its inventory of forms, letterheads, business cards, resumes or other business papers on which its present corporate name appears, and plaintiff shall dispose of its remaining such inventory, if any, no later than thirty days after entry of this judgment.

3. In the event of a finding by a Court of competent jurisdiction of a breach or threatened breach by plaintiff of this judgment, counterclaimant shall be entitled to injunctive relief restraining such breach, which may include the award of its attorney fees in obtaining such relief. Nothing herein shall be construed as prohibiting Arthur Young & Company from pursuing any other remedy or remedies available to it for such breach, including recovery of damages from plaintiff or plaintiff's citation of contempt for a violation of this final judgment.

4. Costs shall be taxed against plaintiff.

DONE and ORDERED this 13 of July, 1983.