(79 South. 116)

G. B. McVAY & SON SEED CO., Inc., v. McVAY SEED & FLORAL CO., Inc.

(6 Div. 650.)

(Supreme Court of Alabama.   April 18, 1918. Rehearing Denied May 30, 1918.)

1. TRADE-MARKS AND TRADE-NAMES ⟾37— PURCHASERS OF BANKRUPT CORPORATION— RIGHTS ACQUIRED.

A corporation by the purchase of assets, name, and good will of a bankrupt corporation acquired the right to the use of the corporate name, including the name of one of the officers as an essential element thereof, and as a means for the passage of the good will with which such name was indissolubly connected.

2. TRADE-MARKS AND TRADE-NAMES ⟾73(1) —USE OF PERSONAL NAME—RIGHTS.

As a general rule, every person has a natural right to the use of his own name for the

designation of his business; and when he does this honestly and fairly, any injury ,that may result to another, doing business under the same or a similar name, is regarded as damnum absque injuria, for which there is no legal remedy.

3. TRADE-MARKS AND TRADE-NAMES ⬚⟳70(3) —SIMILARITY.

Adoption by former officer of "McVay Seed & Floral Co.," of the name of "G. B. McVay & Son Seed Co.," was unfair, since the similarity in names is prima facie sufficient to deceive the public and appropriate part of the trade of the first corporation.

4. TRADE-MARKS AND TRADE-NAMES ⬚⟳67— UNFAIR COMPETITION—FRAUD.

Actual fraud in unfair competition need not be alleged or proved, and constructive fraud is sufficient.

5. TRADE-MARKS AND TRADE-NAMES ⬚⟳73(2) —SIMILARITY OF NAMES—INTEREST.

Where officer of corporation called "McVay Seed & Floral Co." permitted his son and other persons to organize "G. B. McVay & Son Seed Co.," when the father had no interest, and the son but a one five-hundredth interest, in the new corporation, the use of the name "G. B. McVay," even if followed by "Jr.," constituted unfair competition.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by the McVay Seed & Floral Company, Incorporated, against G. B. McVay & Son Seed Company, Incorporated, to enjoin the use of a name. From a decree overruling demurrers to the bill, respondents appeal. Affirmed.

The purpose of the bill is to enjoin the use of the name "McVay" in the corporate name, or in connection with the flower and seed business, either in advertising, or upon the goods of the G. B. McVay & Son Seed Company. Complainant claims to be the corporate successor of the McVay Seed Company, a bankrupt corporation, of which corporation one G. B. McVay was an officer or stockholder, and one of the founders of its business, with which he was actively connected for a long time, so that his name has come to have a secondary meaning in regard to the business of dealing in and selling seed, plants, and flowers. On January 11, 1915, the trustees in bankruptcy legally sold to one J. H. Perdue "all of the goods, wares, and merchandise, furniture, fixtures, mule, dray, automobile, name and good will of the McVay Seed Company, bankrupt. On January 13, 1915,*Perdue assigned interest in said property for several associates, who, on the same day, organized the complainant corporation, the McVay Seed & Floral Company, and conveyed to it all of their interest in the property of the original company as purchased at said bankrupt sale. Since its organization, complainant has been engaged pursuant to its charter powers in the same business as its predecessor, dealing in and selling seeds, plants, and flowers. On January 25, 1917, said G. B. McVay being then in the employment of complainant, his son, G. B. McVay, Jr., his daughter, Mrs. A. M. Stover, and his son-in-law, Fred Stover, organized a new corporation under the name of the G. B. McVay & Son Seed Company, and this is the respondent corporation. This latter corporation had 500 shares of stock of the par value of $10 each, of which G. B. McVay, Jr., took and owns one share, Ann W. Stover took and owned 249 shares, and Fred Stover took and owns 250 shares. G. B. McVay, Jr., is president of the company, and G. B. McVay, Sr., has no connection with it. Its charter powers show: That it was formed to engage in the business of buying, selling, and dealing in seed, bulbs, plants, flowers, poultry, and garden and farm supplies. With full knowledge of plaintiff's business name and rights, respondent company has continuously, since its incorporation, up to the time of the filing of this bill, been doing a seed and flower business, and has used the name "G. B. McVay & Son Seed Company, Incorporated," in connection with said business, and that said use of said name has been without the consent and against the will of orator, and in fraud and violation of orator's rights, to the good will and trade name of the McVay Seed & Floral Company, and that the name of the G. B. McVay & Son Seed Company, Incorporated, is so nearly similar to the name of your orator as to lead to uncertainty and confusion. That by its fraudulent acts as aforesaid, said respondent has diverted to it trade to which your orator was entitled, and which it would otherwise have received; said corporate names being so similar as to deceive the public, and make them believe they are dealing with the successors to the original McVay Seed Company, which is your orator, when, as a matter of fact, they are dealing with G. B. McVay & Son Seed Company, Incorporated. That the public and customers of orator have been deceived, and much confusion has been caused by such unlawful use of the name similar to complainant's tradename, such as to cause mail of the two companies to be confused, and complainant's customers to trade with respondents under the mistaken belief that they are buying from complainant. That said wrongful act has placed your orator's trade-name and good will in jeopardy, and that said acts are continuing, and unless restrained will ultimately destroy the value of orator's trade-name and good will. Demurrers to the bill upon numerous grounds were filed. They may be epitomized as follows:

(1) The allegation of fraud is insufficient, being a mere conclusion.

(2) It does not appear that complainant has the exclusive right, or any right, to use the word "McVay" in its business name.

(3) The names of complainant and defendant corporation are too dissimilar and distinctive to reasonably cause any confusion as to their identity.

(4) It does not appear that the advertisements, catalogues, or packages of respondent were in any way similar in appearance or in substance to complainant.

Allen, Bell & Sadler, of Birmingham, for appellant. B. J. Dryer and A. G. & E. D. Smith, all of Birmingham, for appellee.

SOMERVILLE, J.   The adjudicated cases dealing with the particular phase of unfair competition here involved are quite numerous, and the general principles of the law seem to be well settled, though their application to concrete instances is often not free from difficulty.

[1] We think it is quite clear that the complainant, by its purchase of the assets, name, and good will of the bankrupt corporation, acquired the undoubted right of that concern to the use of its corporate name, including the word "McVay" as an essential element thereof, and as a conduit for the passage of the good will of the original business, with which it was indissolubly connected.   As remarked by an able writer on this subject, "corporations may acquire good will, just as natural persons, and an assignee of the corporate good will and business may use the old corporate name, either with or without an incorporation."   Hopkins on Trade-Marks, etc., 221. Nor was that right lost or impaired by the formation of a new corporation as the successor of the old, with a modification of its original name—the main distinctive features of which were fully retained.

[2] As a general rule, every person has a natural right to the use of his own name for the designation of his business; and when he does this honestly and fairly, any injury that may result to another, doing business under the same or a similar name, is regarded as damnum absque injuria, for which there is no legal remedy.   Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322, note, 352–358; Hopkins on Trade-Marks, etc., § 77; Nims on Unfair Competition, § 68.   What precautions to distinguish the newer business and its goods or products from the older, so as to prevent deception and injury, may be required to meet the demands of honesty and fair dealing in the case of individuals, we need not now consider, for the case before us is materially different.

Here both parties are corporations, and the respondent corporation has deliberately chosen a trade-name in which appears the name of G. B. McVay, Sr., which, though without the initials, was and is an essential element in the trade-name and good will of complainant and its predecessor; and G. B. McVay, Sr., a promoter and stockholder of the original corporation, has no interest in nor connection with the respondent corporation.   It appears also that G. B. McVay, Jr., the son, though he has been made president of the respondent corporation, has a purely nominal interest in the concern, in fact, only $10 out of $5,000, or one five-hundredth part.

In a very comprehensive and valuable note to the case of Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322, 353, the editor summarizes the law as follows:

"It is undoubtedly true, as a general proposition, that a person has a right to use his own name in connection with any business which he honestly desires to carry on.   But where a personal name has become associated in the minds of the public with certain goods or a particular business, it is the duty of a person of the same or a similar name, subsequently engaging in the same business or manufacturing or dealing in like goods, to take such affirmative steps as may be necessary to prevent his goods or business from becoming confused with the business or goods of the established trader.   The same principles forbid a corporation to adopt a name so similar to that of an existing corporation as to deceive the public and permit it to deal on the reputation of the existing corporation."

Scores of illustrations appear in the cited cases.   See, also, the note to Martell v. St. Francis Hotel Co., 16 Ann. Cas. 596.

In Hopkins on Trade-Names, etc., § 80, the author says:

"The general rule governing the supervision of equity over the names of corporations has been comprehensively stated as follows: 'In respect to corporate names, an injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation which tends to create confusion, and to enable the later corporation to obtain, by reason of the similarity of names, the business of the prior one.   The courts interfere in these cases * * * to prevent fraud, actual or constructive.' "   Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Martell v. St. Francis Hotel Co., 51 Wash. 375, 98 Pac. 1116, 16 Ann. Cas. 563, and note.

In Nims on Unfair Competition, § 90, the author observes:

"One of the most common ways of naming a corporation is to use the personal name of one or more of the incorporators.   The rules applicable to it are practically the same as those relating to the use of personal names in other trade-names. * * * There is, however, this difference, as has already been observed, and it is a substantial one.   As the law now stands, when a natural person starts business under his own name, a duty rests upon him to so use that name as to prevent confusion between his house and goods and the house and goods of any other person by the same family name in the same business.   When, however, a person causes the organization of a corporation, a much greater burden and duty rests upon him.   (Italics ours.) If his use of his surname as a part of the corporate name will cause confusion between his new corporation and its rivals, he may not use his name in the corporate name at all."

The same author says further (page 175):

"The sum of the whole matter is this:   If a plaintiff can demonstrate that the defendant's use of its corporate name is causing unfair competition as against the plaintiff, the defendant must change its name, even though it contain the personal name of an incorporator, and inasmuch as an affirmative duty to differentiate itself from the plaintiff rests upon defendant, the failure so to do is an evidence of fraud."

And again (page 179):

"It has been said that the very fact that a body of associates organizing a company take,

as part of the name of the company, the name of one of their number which is the same or nearly the same as that of some rival who has an established business, in most cases gives rise to a presumption of fraud. The presumption may be rebutted; but the fact remains that despite the laudable desire of a promoter or incorporator to make his own name a part of the company, despite his common-law right to use his own name as he will, the trader who enters a court of equity with the greatest claim on its aid is he who has striven to differentiate his goods and his company as much as possible from all rivals, and to sell his goods on their merits, and advertise himself and his house in as individual a manner as possible."

In L. Martin Co. v. L. Martin, etc., Co., 75 N. J. Eq. 39, 71 Atl. 409, the New Jersey Court deal with this subject very pointedly, and say:

"I think we have got beyond the notion. if it ever prevailed, that a man has an absolute right to use his name in his business, shutting his eyes to the inevitable effect of such use to deceive the public generally, and to injure some other dealer in the market. The maxim, 'Sic utere tuo ut alienum non lædas,' applies to everything a man has, including his name. Confusion seems to have sometimes arisen from the failure to recognize the difference between the name with which a man finds himself incumbered and perhaps cursed when embarking in business, and which perhaps to a very large extent he is practically obliged to use in such business, with the name of a corporation which he creates for the purpose of carrying on his business. He is not responsible for his individual name—had no chance in its selection; he is wholly responsible for the corporate name, having had a wide field within which to make any selection as he might see fit."

[3] With respect to the use by respondent of the name of G. B. McVay, Sr., as part of its corporate name, the bill shows clearly. that it is without justification, calculated to deceive the public, and in fraud of the rights of complainant in the premises. It is no sufficient answer to this to point to· the differentiation of the corporate names. The similarity is prima facie sufficient to deceive the public and appropriate more or less of complainant's trade; and its adoption by respondent is, under the circumstances, sufficient evidence of respondent's belief in its efficacy for that purpose.

In the language of Bradley, J., in Celluloid Mfg. Co. v. Cellonite Mfg. Co. (C. C.) 32 Fed. 94:

"The defendant's name was of its own choosing, and if an unlawful imitation of complainant's is subject to the same rules of law as if it were the name of an unincorporated firm or company. It is not identical with the complainant's name. That would be too gross an invasion of the complainant's right. *Similarity, not identity*, is the usual recourse when one party seeks to benefit himself by the good name of another. (Italics ours.)"

And, as remarked by Mr. Nims:

"The choice of a name colorably similar to that used by a competitor is evidence ·of fraud, especially if it is likely that the new corporation will profit by the confusion that will result from the similarity between its name and that of a competitor." Nims on Unfair Competition, p. 163.

[4] We think the bill alleges facts which support the conclusion of actual fraud. But the better view is that actual fraud in unfair competition need not be alleged or proved, and that constructive fraud is sufficient, and this is the rule in this state. Grand Lodge K. P. of N. & S. America v. Grand Lodge K. P., 174 Ala. 395, 56 South. 963; Boston Shoe Shop v. McBroom Shoe Shop, 196 Ala. 262, 72 South. 102. Nor is it necessary to show, in a bill for injunctive relief only, that any persons have been actually deceived. Boston Shoe Shop v. McBroom Shoe Shop, supra. We have stated that the allegations of the bill show that respondent's use of the name of G. B. McVay in its corporate or trade-name is unfair competition, against which injunctive relief should be granted. It follows that the demurrer to the bill of complaint was properly overruled.

[5] We may as well add, also, that such use by respondent of the name "McVay," even if qualified by the word "Junior" affixed thereto—the name having been voluntarily given to the older corporation by its senior owner, and having acquired a special and secondary significance in its relation to seeds and plants in that business in Birmingham and the neighboring territory—would equally offend against fair trade, and entitle complainant to the same injunctive relief. This is especially·true in view of the merely nominal character of McVay, Jr.'s, connection . with respondent, which strengthens the conclusion that the use of the name is but a colorable device to accomplish an unfair, if not a fraudulent, purpose to appropriate the reputation, and with it the trade, of the complainant company.

Let the decree of the circuit court be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.