**ÆTNA CASUALTY & SURETY CO. v.
ÆTNA AUTO FINANCE, Inc.
No. 9776.**

Circuit Court of Appeals, Fifth Circuit.
Nov. 14, 1941.

Rehearing Denied Dec. 16, 1941.

Frank E. Spain and H. H. Grooms, both of Birmingham, Ala., for appellant.

Harvey Deramus, of Birmingham, Ala., and Butler Disman, of Kansas City, Mo., for appellee.

Before HUTCHESON and McCORD, Circuit Judges, and MIZE, District Judge.

HUTCHESON, Circuit Judge.

The suit was brought by appellant to enjoin appellee from using as its corporate name "Aetna Auto Finance, Inc." The gist of the complaint as appellant's brief states it, was that defendant, a newly formed company, loaning money to automobile owners, and furnishing insurance on their cars, in connection with the loans, has chosen the name by which plaintiff has, for a long time been known, and has imitated its advertising, and is thereby leading these owners to think they are dealing with plaintiff, in violation of the principle that a name and reputation, like a face, is the symbol of its possessor and creator and another can use it only as a mask. The defense in general was that the name Aetna has not been and cannot be exclusively appropriated by plaintiff, that it has had wide and general use and is not at all peculiarly identified with so as to necessarily suggest plaintiff. It was further contended that, no case of unfair competition was or could be made out, indeed no case of competition of any kind, nor was there any showing that the name was chosen with unlawful design or has been or will be unfairly or fraudulently used, or that its choice or use of the name has injured or threatens injury to plaintiff.

Plaintiff is and has been for over thirty years, one of several affiliated companies of Hartford, Connecticut, integrated through stock ownership and management into one nation-wide insurance organization and equipped to insure all or any of the insurable hazards of the country.

Automobile risks of all sorts are the concern of and are insured in plaintiff and its affiliated companies. At an annual cost of many hundred thousands of dollars, plaintiff has built around the slogan "Aetna-Ize" and other similar slogans, including "Aetna Service Spans the Conti-

nent", "It Will Pay You to be an Aetna-Izer", and "The Aetna Auto Plan." Plaintiff has repeatedly employed the terms, "Aetna Auto Combination Insurance", "Aetna-Auto Liability Insurance", and "Aetna-Auto Property Damage Insurance", "Aetna Auto Collision Insurance", "Aetna-Auto Fire & Theft Insurance", "Aetna Auto Fire Policy", "Aetna-Auto Fire Premium" and "Aetna Auto Companies."

Exhibits in evidence reveal the use of many advertising media no less than 24, where the words "Aetna" and "Auto" are conjoined. Plaintiff, thus, is not to be confused with the other aggregation of insurance companies known as the "Aetna Fire Group", with which plaintiff and its associates were once affiliated but of which they are now competitors. From 1924 to 1935, plaintiff and its affiliated companies, spent more than $2,000,000 in advertising and obtaining good will and of this nearly ⅓ was devoted to the production of automobile business. The good will accruing to plaintiff and its affiliated companies by this advertising is literally immeasurable because in addition to spending money to advertise their business, they, through their 10,000 local agents, have carried on a nation-wide safe driving test service. Plaintiff's volume of business in Alabama in 1938 was $224,595.86, and there was testimony that "a company like that of defendant, whose name would tie up closely, might lead the public to believe they were in some way affiliated with us and we are necessarily affected by any unfavorable publicity the other concern got." There was also some testimony of actual confusion of defendant with plaintiff.

Defendant is an automobile finance company loaning money on automobiles and arranging for the sale of insurance thereon, in connection with such cars, incorporated in Jefferson County, Alabama, in 1937 with $2,000 authorized capital. It is a subsidiary of Lewis Investment Company of Missouri, whose other subsidiaries are "Aetna Auto" Finance Company of Kansas, "Aetna Auto" Finance of Georgia and Phoenix Finance Corporation of Arkansas. Defendant does employ the name Aetna, prominently displayed, and it is employing a circular device of approximately the same size and appearance as that employed by complainant upon which is imposed among other things, two automobiles and over which is written in the same general type as that employed by complainant, the word "Aetna". In its ad-

vertising it states that it is a "National Institution", refers to its "National program" and states that it has "A New Plan for Auto Loans." It states that it has "A Complete Auto Loan Service." It asks its customers to "deal with a reputable company with a national reputation." It states that "Aetna Brings to Birmingham a new plan for Automobile Loans." It employs the slogan "The Aetna Way." But it denies that the disk is similar to plaintiffs' and it claims to have, since the controversy with Aetna arose, discontinued some of its advertising, particularly the statement that it is a "national institution." It insists that it has not invaded and does not intend to invade the casualty insurance business but intends to confine its operations to automobile financing. In support of its contention that plaintiff's use of the name Aetna is not and cannot be exclusive, it offered: large numbers of trade mark registrations, identifying articles, some used by and some not used by plaintiff; numerous corporate charters in various states of numerous corporations not identified with plaintiff; and telephone directories of various cities containing the name "Aetna", as a part of the title, of various enterprises and businesses.

On full evidence the cause was submitted to a special master who found that, though defendant had in the beginning used advertising that it ought not to have used, it had desisted, and that its conciliatory attitude since had deprived that fact of importance in the case. He found too, that the evidence did not support the charge that the name was taken with a fraudulent or unfair intent, but that it showed that the name was not adopted for the purpose of passing its business off as complainant's business or as one in any manner connected with complainant.

He further found that the actions of the respondent since its incorporation have not had as their purpose or as their result, the deception of the public into the belief that the respondent is connected with the complainant. He found finally that respondent is not engaged in competition with the complainant and that not only has the public not been confused by the use of the name but that plaintiff has not been and will not be damaged by the defendant's use of it. His findings and recommendations were approved by the district judge and there was a judgment for defendant.

■ Appellant is here insisting; that the finding that there was no actual intent to build on plaintiff's name is wholly contrary to the evidence, and further, that the solution of the case does not depend upon an actual intent to defraud, that is, to deceive any member of the public to his injury or even to deceive the plaintiff itself, or upon the existence of actual competition in a precise field. He insists therefore that the master misapprehended the nature of the case and decided it wrongly, upon such misapprehension.

The case turns appellant says, upon whether the evidence as a whole furnishes reasonable ground for the belief that there is a probability that persons may be deceived by the use of the name into thinking that there is a connection between plaintiff and the defendant, and that it would have a large bearing upon the attitude of the court, if defendant had this probability in mind, and was intending to create or give the impression that it was connected, identified or in some way affiliated with plaintiff.

We agree with appellant. There may of course be imagined many cases where the use of the word "Aetna", standing alone, will not be relieved against. It will serve no useful purpose to set these out. What is confusing here and what makes it plain that the defendant must be held accountable in equity for its actions, is that it has not contented itself with merely using the word "Aetna" for its name, but has taken the combination "Aetna Auto", which plaintiff by its advertising, has made completely suggestive of itself.

The name itself coupled with the advertising defendant began with, but which now under threat of suit it has discontinued, leaves us in no doubt that it was the purpose of defendant to build itself upon the established reputation and business strength of plaintiff and to reap such benefit from it as it could. The mere desisting from these practices when brought to book for them, will not prevent an injunction against the use of the name which by its advertising it has identified with them. Neither will it do for defendant to say that its purpose is not to take automobile insurance from plaintiff because it is not in that business but in the business of loaning. It might not take any automobile insurance away and still not escape the charge of unfair competition. But as a matter of fact, its activities which always couple the giving of insurance with the giving of loans, will necessarily take some business away from plaintiff.

■ But more significant and important than the fact that this is so, is the purpose evidenced by the choice, by this new comer into the field of automobile financing, of name and advertising matter. This purpose is to project itself into that business arena panoplied in a name already favorably known, rather than to come into it on its own merits, and slowly building, here a little, there a little, establish its own place. The cases from this circuit on which appellee, the master and the district judge relied below[1] do not support appellee's position. They were all cases of entirely different purport. Cases in point here are: American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Armstrong Paint & Varnish Works v. NU-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Standard Oil of New Mexico v. Standard Oil of California, 10 Cir., 56 F.2d 973; Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 34 F.2d 774; Western Auto Supply Co. v. Knox, 10 Cir., 93 F.2d 850; Churchill Downs Distilling Co. v. Churchill Downs, 262 Ky. 567, 90 S.W.2d 1041; Indian Territory Oil & Gas Co. v. Indian Territory Illumination Oil Co., 10 Cir., 95 F.2d 711. These cases all hold that where as here it plainly appears that there is a purpose to reap where one has not sown, to gather where one has not planted, to build upon the work and reputation of another, the use of the advertising or trade name or distinguishing mark of another, is in its nature, fraudulent and will be enjoined. We think too that the invoked Alabama Name Statute,[2] supports appellant's claim to the injunction it asks.

[1] Joseph Schlitz Brewing Co. v. Houston Ice & Brewery Co., 5 Cir., 241 F. 817; Continental Ins. Co. v. Continental Fire Ass'n, 5 Cir., 101 F. 255; Pulitzer Publishing Co. v. Houston Printing Co., 5 Cir., 11 F.2d 834; Fidelity Bond & Mortgage Co. v. Fidelity Bond & Mortgage Co. of Texas, 5 Cir., 37 F.2d 99; Gleaves v. W. B. Fishburn Co., 5 Cir., 82 F.2d 627.

[2] "No name shall be assumed which is identical with that of any corporation already existing in this state, or so nearly similar thereto as to lead to confusion and uncertainty." Title 10, Sec. 2, Alabama Code. White v. Citizens

The judgment refusing the injunction was wrong and must be reversed and the cause is remanded for further and not inconsistent proceedings.

Light & Power Co,. 172 Ala. 232, 55 So. 193; Harrison Transfer Co. v. Harris Transfer & Warehouse Co., 208 Ala. 631, 95 So. 12; Bankers' Fire & Marine Ins. Co. v. Sloss, 229 Ala. 26, 155 So. 371; McVay & Sons Seed Co. v. McVay Floral Co., 201 Ala. 644, 79 So. 116; Grand Lodge v. Grand Lodge, K. of P., 174 Ala. 395, 56 So. 963; Boston Shoe Shop v. McBroom Shoe Shop, 196 Ala. 262, 72 So. 102.