DONALDSON, Judge.
MAE Hardwoods, Inc., d/b/a American Hardwoods, Inc. (“MAE Hardwoods”), filed a complaint against Roy F. Roddam, Sr. (“Roddam”), and Major Millworks, Inc. (“Millworks”), in the Shelby Circuit Court (“the trial court”) seeking damages for breach of contract. Following a trial, the trial court entered a judgment against Roddam and Millworks, awarding damages that included attorney fees. Roddam and Millworks appeal. Because the record does not contain evidence to support MAE Hardwoods’ claim against Roddam or the award of attorney fees pursuant to the contract at issue, we reverse those portions of the judgment. We affirm all other portions of the judgment.

Facts and Procedural History

MAE Hardwoods is a manufacturer of custom wooden building materials. The owner and president of MAE Hardwoods is Kerry Mason. Through an agreement (“the purchase agreement”) dated March 19, 2006, Mason purchased the assets of American Hardwoods, Inc., a company undergoing liquidation in bankruptcy proceedings. The purchase agreement specified that the assets purchased by Mason included the goodwill of American Hardwoods, Inc., and the right to use the name “American Hardwoods.” Mason then formed a new corporation, MAE Hardwoods, Inc. Thereafter, MAE Hardwoods, Inc., conducted business using the name “American Hardwoods.” Mason testified that MAE Hardwoods, Inc., had acquired his interests in American Hardwoods, Inc., including the right to use the name “American Hardwoods.”
Millworks is a company located in Alabama that provides services and goods for homebuilding projects. In 2006, MAE Hardwoods supplied materials to Mill-works, and Millworks paid the invoices for those materials. In 2009, MAE Hardwoods delivered materials to a building project in Gadsden where Millworks was performing work for the property owner and the builder. A statement dated February 6, 2010, lists a number of invoices billed to Millworks and Roddam, partial payments for those invoices made by Mill-works, and finance charges for incomplete payment, reflecting a total amount due of $25,533.16.
On March 9, 2011, MAE Hardwoods filed a complaint in the trial court seeking damages against Roddam and Millworks for breach of contract. MAE Hardwoods did not allege any other grounds for relief. MAE Hardwoods attached copies of the invoices billed to Millworks and Roddam in 2009 and a document it asserted was a contract between all of the parties (“the contract”). The invoices were sent to Mill-works on the letterhead of “American Hardwood, Inc.,” and the contract contained the same name. MAE Hardwoods alleged that it had entered into the contract in 2006 with Roddam and Millworks and that, pursuant to the contract, MAE Hardwoods agreed to extend a line of credit to Roddam and Millworks for supplied materials. MAE Hardwoods alleged that Roddam and Millworks breached the contract by failing to pay for materials, and it sought the unpaid amounts of the invoices. MAE also sought late fees, interest, and attorney fees pursuant to the terms of the contract.
The contract contained the following statements and terms of agreement:
• “STATEMENT: Purchase of goods will indicate the acceptance of American *718 Hardwoods, Inc. credit terms. American Hardwoods, Inc. terms are as follows: The entire Invoice amount is due in full by the 10th'. day of the month following the month of Invoice..... If the account is not paid according to our terms, the amount is past due, and -in default, and a late charge or finance charge of 1.5% will be assessed to these invoices at the end of the month when statements are run. The 1.5% finance/service charge results in an annual percentage rate of 18%....
“STATEMENT: Purchases and/or deliveries are herewith authorized to be made without signature.
[[Image here]]
“STATEMENT: In the event this account is placed in the hands of an attorney for collection, or suit is instituted to collect same or any portion thereof, I and/or we agree and promise to pay all attorney collection fees and court costs and hereby waive all rights of exemption under the laws of the State of Alabama or any other state of the United States.
[[Image here]]
“STATEMENT: In consideration of credit being extended by American Hardwoods, Inc. to me/us/it, and/or we . certify the truthfulness and veracity of the statement appearing on the application and agreement, and I and/or we guarantee and bind ourselves to the faithful payment of all amounts owed, now or in the future by me, us, either of us or any other person, firm, or corporation for our benefit. If credit is extended to a corporation in which we, either of us, or I am an officer, shareholder, employee, or in which an interest exist, I and/or we will personally and faithfully guarantee the payment of all credit extended to said corporation.”
The contract is dated July 25, 2006, and is signed by Roddam. The record does not indicate that Roddam received any monetary compensation for signing the contract.
On- May 26, 2011, Roddam and Mill-works filed an answer denying the allegations of the complaint. MAE Hardwoods filed a motion for a summary judgment on May 11, 2012, and a renewed motion for a summary judgment on March 14, 2013. Roddam and Millworks responded to both motions, arguing in part that the only party entitled to enforce the contract -was the company in bankruptcy proceedings named “American Hardwoods, Inc.,” and not MAE' Hardwoods, Inc. On April 2, 2013, the trial court denied the motions for a summary judgment. , '
The trial court conducted a bench trial over three days in 2013. The trial court heard testimony from Mason and Hope Roddam, an employee of Millworks. Mason testified that he purchased the use of the name “American Hardwoods” as a part of the overall purchase of the assets of a company in bankruptcy proceedings because the name was well known. Mason testified that he then formed MAE Hardwoods, Inc., and that, by July 2006, MAE Hardwoods, Inc., was doing business as “American Hardwoods, Inc.” He testified that MAE Hardwoods entered into the contract using the name “American Hardwoods, Inc.”
Hope is Roddam’s daughter-in-law. She testified that Roddam’s role in Millworks was only as a passive investor and that he had acquired the company in -2006 and had sold it to his son and her a year later. She testified that Roddam had signed a credit application to receive deliveries of materials for a building project in 2006 that was unrelated to the 2009 project in Gadsden. She testified that Roddam had not had any involvement with Millworks for several years by 2009 and that he did not have any involvement with MAE Hardwoods, the *719 property owner, or the builder for the project in Gadsden in 2009.
Hope testified to Millworks’ involvement in the building project in Gadsden. Mill-works had installed doors and windows, which were not provided by MAE Hardwoods. Hope testified that she had contacted MAE Hardwoods after the builder and the property owner had become interested in specific types of moulding. She testified that she had allowed the decorator and the homebuilder to make the decisions regarding the moulding without her involvement. She testified that, to her knowledge, the homebuilder had ordered the materials from MAE Hardwoods. She testified that she did not place the orders and that she could not find a copy of the invoices in Millworks’ records.
Mason testified that, in 2009, Millworks ordered and took possession of the materials supplied by MAE Hardwoods. Mason testified that Hope had placed the first order and had provided him with the directions to the location in Gadsden. He testified that he had been present for the first delivery to the Gadsden site and that he had met a Millworks representative during the delivery. Mason testified that he had contacted Millworks two or three times when the invoices were not paid and that Millworks had responded by making two partial payments of a thousand dollars each.
On August 21, 2013, the trial eourt entered a judgment in favor of MAE Hardwoods, finding that the parties had entered into an enforceable contract on July 25, 2006, pursuant to which MAE Hardwoods supplied building materials to Millworks. The trial court found that Roddam and Millworks breached the contract by failing to timely pay invoices totaling $25,533.16. The judgment awarded MAE Hardwoods the amount of the unpaid invoices and 18% percent interest on the unpaid balance, as provided for in the contract, in the amount of $13,787.90; The judgment also awarded attorney fees as follows:
“The contract expressly calls for [Roddam and Millworks] to pay attorney . fees and court costs if any balance is placed in the hands of an attorney for collection or' suit is instituted. Accordingly, the Court awards a reasonable attorney fees to [MAE Hardwoods] in the amount of $7,500.00.”
The total judgment amount is $46,821.06.; On September 20, 2013, Rod-dam and Millworks filed a motion to alter, amend, or vacate judgment, and for other relief, asserting over 60 grounds that included the following arguments: 1) MAE Hardwoods lacked standing because it was not a party to the contract, 2) the trial court’s findings were manifestly against the weight of the evidence, and 3) MAE Hardwoods failed to submit evidence to support the award of attorney fees and interest. After conducting a hearing, the trial court denied the postjudgment motion on November 26, 2013. On January 7, 2014, Roddam and Millworks filed a timely notice of appeal to this court.

Standard of Review

We apply the following standard of review:
“When evidence is presented ore ten-us, the trial court is ‘“unique[ly] positioned] to directly observe the witnesses and to assess their demeanor and credibility.” ’ Ex parte T.V., 971 So.2d 1, 4 (Ala.2007) (quoting Ex parte Fann, 810 So.2d 631, 633 (Ala.2001)). Therefore, a presumption of correctness attaches to a trial court’s factual findings premised on ore tenus evidence. Ex parte J.E., 1 So.3d 1002, 1008 (Ala.2008). When evidence is taken ore-tenus and the trial, judge makes no express findings of fact, this Court will assume that the trial judge -made those findings nec *720 essary to support the judgment. Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992) (citing Fitzner Pontiac-Buick-Cadillac, Inc. v. Perkins & Assocs., Inc., 578 So.2d 1061 (Ala.1991)). We will not disturb the findings of the trial court unless those findings are ‘clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.’ Gaston v. Ames, 514 So.2d 877, 878 (Ala. 1987) (citing Cougar Mining Co. v. Mineral Land & Mining Consultants, Inc., 392 So.2d 1177 (Ala.1981)). ‘ “The trial court’s judgment [in cases where evidence is presented ore tenus] will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.” ’ Transamerica, 608 So.2d at 378 (quoting Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 13 (Ala.1989), and citing Norman v. Schwartz, 594 So.2d 45 (Ala. 1991)); see also Ex parte Perkins, 646 So.2d 46 (Ala.1994).”
Espinoza v. Rudolph, 46 So.3d 403, 412 (Ala.2010).

Discussion

Roddam and Millworks argue that MAE Hardwoods was not a party to the contract and that, therefore, MAE Hardwoods lacked standing to pursue its breach-of-contract claim or the right to enforce the contract. Based on the assertion that MAE Hardwoods is a stranger to the contract, Roddam and Millworks also argue that the trial court erred in finding that a written contract existed between MAE Hardwoods and Millworks and that, as a result, the trial court erred in awarding MAE Hardwoods interest on the unpaid amount of the invoices pursuant to the contract. All of those arguments depend on the contention that any contract to pay for the materials delivered was with American Hardwoods, Inc., and not with MAE Hardwoods.
MAE Hardwoods argues that it entered the contract using the name “American Hardwoods, Inc.” A domestic corporation “has the same powers as an individual to take action necessary or convenient to carry out its business and affairs.” § 10A-l-2.il, Ala.Code 1975; see also § 10A-1-7.32, Ala.Code 1975 (“A foreign nonfiling entity or a foreign filing entity registered under this article enjoys the same but no greater rights and privileges as the domestic entity to which it most closely corresponds.”). ““‘Without abandoning his real name a person may adopt any name, style or signature wholly different from his own name by which he may transact business, execute contracts, issue negotiable paper and sue and be sued.” ’ ” State v. Taylor, 415 So.2d 1043, 1046-47 (Ala.1982) (quoting Ingram v. Watson, 211 Ala. 410, 413, 100 So. 557, 559, (1924), quoting in turn 29 Cyc. 270); see Jordan Undertaking Co. v. Asberry, 230 Ala. 97, 98-99, 159 So. 683, 684 (1935) (“A person may adopt any name or style different from his own by which he may transact business — ” (citing 29 Cyc. 270, and Carlisle v. People’s Bank, 122 Ala. 446, 26 So. 115 (1899))). “A person may adopt what name he pleases, and if he deals with others, or goes to court in a name, no matter what, no harm is done. No one with whom he deals or litigates can complain_” Milbra v. Sloss-Sheffield Steel & Iron Co., 182 Ala. 622, 630, 62 So. 176, 179 (1913); see also Wilson v. Thomason, 406 So.2d 871, 872 (Ala.1981) (“[I]t has been said that a person may adopt what name he pleases if no harm has been done.” (citing Milbra, supra)). “ ‘Absent a statute to the contrary, an individual has the right to be known by any name that he chooses, and a judgment entered for or against that individual in either an as *721 sumed name or a trade name is valid.’” Lifestar Response of Alabama, Inc. v. Lemuel, 908 So.2d 207, 215 (Ala.2004) (quoting Hughes v. Cox, 601 So.2d 465, 471 (Ala.1992)).
Furthermore, “ ‘corporations may acquire good will, just as natural persons, and an assignee of the corporate good will and business may use the old corporate name, either with or without an incorporation.’ Hopkins on Trade-Marks, etc., 221.” G.B. McVay & Son Seed Co. v. McVay Seed & Floral Co., 201 Ala. 644, 646, 79 So. 116, 118 (1918). “ ‘[T]he abbreviation “Inc.,” means “incorporated,” and is equivalent to “(a corporation).” ’ ” Irvin v. State, 44 Ala.App. 101, 106, 203 So.2d 283, 288 (1967) (quoting Indian Ref. Co. v. Royal Oil Co., 102 Cal.App. 710, 712, 283 P. 856, 857 (1929), citing in turn Goldberg, Bowen & Co. v. Dimick, 169 Cal. 187, 188-89, 146 P. 672, 673 (1915)). According to the purchase agreement, Mason purchased assets including goodwill of American Hardwoods, Inc., and the right to use the name “American Hardwoods.” Roddam and Millworks do not contend that the use of the name “American Hardwoods, Inc.,” by MAE Hardwoods, Inc., was fraudulent or confusing, nor do they contend that a separate entity known as “American Hardwoods, Inc.,” supplied the materials that were the basis of the invoices. Stated otherwise, there is no evidence in the record that Roddam or Millworks risk owing any other entity for the materials delivered in 2009. Therefore, MAE Hardwoods’ addition of “Inc.” to “American Hardwoods” as the name used in the contract is of no consequence under the particular circumstances of this case. The evidence was sufficient for the trial court to find that supplies were delivered to Millworks by MAE Hardwoods, Inc., using the name American Hardwoods, Inc. In this case, MAE Hardwoods, Inc., was not prohibited from using the name “American Hardwoods, Inc.,” in its contractual dealings with Roddam and Millworks, nor was it prohibited from using the name “MAE Hardwoods, Inc., d/b/a American Hardwoods, Inc.,” in filing the complaint against them.
Roddam and Millworks argue that MAE Hardwoods, Inc., was not free to use the name “American Hardwoods, Inc.,” citing § 10A-1-5.03, Ala.Code 1975. Section 10A-1-5.03 prohibits the registration of a company name with the Office of the Secretary of State that is indistinguishable from another registered name unless the previously registered company consents to the use of its name and submits a satisfactory change in name to the Office of the Secretary of State. However, Roddam and Millworks failed to show a violation of that statute by, for example, presenting evidence as to the registered names of MAE Hardwoods, Inc., and American Hardwoods, Inc.
Roddam and Millworks further argue that the existence of an entirely separate corporation named American Hardwoods, Inc., in 2006 defeats MAE Hardwoods’ contention that it was a party to the contract. Roddam and Millworks cite Med Center Cars, Inc. v. Smith, 727 So.2d 9, 16 (Ala.1998), in which' our supreme court concluded that Serra Automotive, Inc., could not enforce an arbitration agreement against Vivian Smith because the agreement was between Smith and a separate and distinct entity known as Serra Mitsubishi, Inc. Unlike in that case, in this case the company named American Hardwoods, Inc., sold to Mason the right to use its name. Mason testified that MAE Hardwoods, Inc., subsequently acquired the right to use that name and that MAE Hardwoods, Inc., doing business as “American Hardwoods, Inc.,” had entered into the contract with Roddam and Millworks. *722 Roddam and Millworks offer no facts to show that Roddam had actually contracted with another entity or that another company had supplied- th.e materials ordered by Millworks in 2006 and the materials for.the project in Gadsden in 2009. We conclude that Roddam and Millworks have failed to show reversible error..regarding the trial court’s determination that MAE Hardwoods was the proper party .to the contract.
-In its cómplaint, MAE Hardwoods’ only claim against Roddam, as well as Millworks, is a claim alleging breach of -contract. Roddam and Millworks argue that, even if there was a contract between the parties, MAE Hardwoods failed to present evidence of Roddam’s liability pursuant to the contract. “ ‘In order to establish a breach-of-contract claim, a plaintiff must show “(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant’s nonperformance, and (4) damages.”’” Cool Temp, Inc. v. Pennsylvania Nat’l Mut. Cas. Ins. Co., 148 So.3d 448, 455 (Ala.Civ.App.2013) (quoting Ex parte Alfa Mut. Inc. Co., 799 So.2d 957, 962 (Ala.2001), quoting in turn Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995)). MAE Hardwoods, thus,, had the burden of proving Roddam’s liability pursuant to the contract. The following provision of the contract addressed Roddam’s responsibility:
“I and/or we guarantee and- bind ourselves to the faithful payment of all amounts owed, now or in the future by me, us, either of us or any other person, firm, or .corporation for our benefit. If credit is extended to a corporation in which we, either of us, .or I am an officer, shareholder, employee, or in which ■ an interest exist, I and/or we will personally and faithfully guarantee the payment of all credit extended to said corporation.”
Roddam’s responsibility was not unconditional. His liability was limited to amounts owed for purchase orders that he placed. He was also liable as a surety for orders made either for his benefit or for as long as he had an interest in Millworks. Hope testified that, by 2009, Roddam had ho involvement in Millworks after having sold the company to her and her husband and that Roddam was not involved in the 2009 building project in Gadsden. MAE Hardwoods failed to present evidence to the trial court that refutes Hope’s testimony. No evidence in the record shows that Roddam ordered the materials for the 2009 project, that those orders were for his benefit, or that he had an interest in Millworks at that time. We, therefore, hold that MAE Hardwoods failed to show Roddam’s liability pursuant to the contract.
Roddam and Millworks also argue that the trial court’s award of attorney fees was unsupported by any evidence and must be reversed.
“ ‘ “The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.” Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992). Our deference to the trial court in attorney-fee cases is based upon our recognition that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in fee determinations. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nevertheless, the trial court’s order regarding an attorney fee must allow for meaningful review by articulating the decisions made, the reasons supporting those decisions, and the *723 performance of the attorney-fee calculation. American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir.1999); see also Hensley, 461 U.S. at 437, 103 S.Ct. 1933.’ ”
Beal Bank, SSB v. Schilleci, 896 So.2d 395, 404 (Ala.2004) (quoting City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala. 2001)).
“The complete list of criteria used in the estimation of the value of an attorney’s services now includes the following: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that, a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. Of course, not all of the criteria will be applicable. ‘Indeed, there would hardly ever be a ease where the [determination] of attorney’s fees brought into play every criterion.’ Graddick v. First Farmers & Merchants National Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984).”
Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988). “Although all' of the criteria set forth must be taken into consideration (though all criteria need not be met) it has been generally recognized that the amount of time consumed should be the first yardstick used by the trial court.” Clement v. Merchants Nat’l Bank of Mobile, 493 So.2d 1350, 1355 (Ala.1986) (citing Peebles v. Miley, 439 So.2d 137 (Ala.1983), and Graddick v. First Farmers & Merchants Nafl Bank of Troy, 453 So.2d 1305 (Ala.1984)).
Parties seeking “an attorney fee bear the burden of proving' their entitlement to an award and documenting their appropriately expended hours.” Beal Bank, 896 So.2d at 408 (citing City of Birmingham v. Horn, supra). “[A] trial court may not order one party to pay another party’s attorney’s fees without first receiving evidence of the amount of those fees and then determining the reasonableness of that amount.” A.B. v. J.B., 40 So.3d 723, 735 (Ala.Civ.App.2009) (reversing an order requiring wife to pay husband’s attorney fees that was entered without any evidence as to the amount of fees). Even though MAE Hardwoods asserted a claim for attorney fees in its complaint, “‘[i]t is well settled that “the statements of counsel in a pleading or brief are not evidence.” ’ ” Wehle v. Bradley, [Ms. 1101290, March 14, 2014] (Ala.2014) * (quoting Watson v. Whittington Real Estate, LLC, 16 So.3d 802, 809 (Ala.Civ.App. 2009), quoting in turn State Dep’t of Revenue v. Wells Fargo Fin. Acceptance Alabama, Inc., 19 So.3d 892, 897 (Ala.Civ.App. 2008)).
In Wehle v. Bradley, our supreme court reversed an award of attorney fees
*724 sought pursuant to § 43-2-849, Ala. Code 1975, because there was no testimony or other evidence presented at trial regarding the fees.[1] The supreme court held that “[t]he ‘Applicants for an attorney fee bear the burden of proving their entitlement to an award and documenting their appropriately expended hours,’ City of Birmingham v. Horn, 810 So.2d 667, 682 (Ala.2001), and ‘it has been generally recognized that the amount of time consumed should be the first yardstick used by the trial court.’ Clement v. Merchants Nat’l Bank of Mobile, 493 So.2d [1350,] 1355 [(Ala.1996) ].” Wehle, — So.3d at -. ** Consequently, the supreme court held that the award of attorney fees was due to be reversed based on the failure to present proof of the fees requested.
In this case, although the contract provided a legal basis from which attorney fees could be awarded, MAE Hardwoods had the burden to show that it was entitled to attorney fees through the presentation of appropriate proof. See Wehle;† Beal Bank, 896 So.2d at 408; and Horn, 810 So.2d at 682. The only testimony regarding attorney fees is the following answer by Mason on direct examination:
“Q. ... [I]f you were forced to turn any unpaid balance over to an attorney for collection, it was your understanding per [the contract] signed by Roy Rod-dam that Major Millworks was to be responsible for any attorney’s fees; is that correct?
“A. That’s correct.”
MAE Hardwoods did not present any testimony or documentation to support the attorney fees awarded, nor any evidence indicating that MAE Hardwoods even incurred attorney fees in this case. Although evidence regarding all the factors listed in Van Schaack need not be presented, the party seeking an award of attorney fees must present sufficient evidence to the trial court to support the amount awarded and to provide the party against whom fees are sought a meaningful basis from which the fees awarded can be challenged. See, e.g. Wehle, — So.3d at -†† (“‘[T]he trial court’s order regarding an attorney fee must allow for meaningful review by articulating the decisions made, the reasons supporting those decisions, and the performance of the attorney-fee calculation.’” (quoting City of Birmingham v. Horn, 810 So.2d at 682)). Because MAE Hardwoods did not meet its burden of proof as to this issue, the award of attorney fees to MAE Hardwoods must be reversed.

*725
Conclusion

For the reasons stated, we reverse the judgment entered against Roddam, and, we reverse that part of the judgment awarding attorney fees to MAE Hardwoods. We affirm the judgment in all other aspects. We remand the cause to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

 Note from the reporter of decisions: On October 30, 2015, the Alabama Supreme Court withdrew the March 14, 2014, opinion' in ’ Wehle and substituted another one. The substituted opinion contians the same quoted material. See Wehle v. Bradley, [Ms. 1101290, October 30, 2015] — So.3d -, - (Ala. 2015).

. Section 43-2-849 provides:
“If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, the personal representative is entitled to receive from the estate necessary expenses and disbursements, including, but not limited to, reasonable attorneys' fees incurred.”

 Note from the reporter of decisions: On October 30, 2015, the Alabama Supreme Court withdrew the March 14, 2014, opinion in Wehle and substituted another one. The substituted opinion contians the same quoted material. See Wehle v. Bradley, [Ms. 1101290, October 30, 2015] — So.3d -, - (Ala. 2015),

 Note from the reporter of decisions: On October 30, 2015, the Alabama Supreme Court withdrew the March 14, 2014, opinion in Wehle and substituted another one. See Wehle v. Bradley, [Ms. 1101290, October 30, 2015] — So.3d - (Ala. 2015).

 Note from the reporter of decisions: On October 30, 2015, the Alabama Supreme Court withdrew the March 14, 2014, opinion in Wehle and substituted another one. The substituted opinion contians the same quoted material. See Wehle v. Bradley, [Ms. 1101290, October 30, 2015] — So.3d -, - (Ala. 2015).